AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>In the Matter of the Search of Blue Motorola Cellular<br>Smartphone: serial #352304804773364 | )<br>)<br>)  Case No. 22-1449MB<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of ____Arizona____
*(identify the person or describe the property to be searched and give its location)*:
As described in Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ___4/8/2022___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   any U.S. Magistrate Judge in the District of Arizona.
                                                                                                                  *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  3/25/2022 at 4:55 pm          _____/s/_____
                                                                                    Judge's signature

City and state:   Yuma, Arizona                James F. Metcalf, United States Magistrate Judge
                                                                    *Printed name and title*

## ATTACHMENT A

Property to be searched

The property to be searched is a blue colored Motorola cellular smartphone, serial number 352304804773364 (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at 4151 S. Avenue A Yuma, AZ 85365.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

Property to be seized

1.   Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications of other illegal activity. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO.

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2.   Any records and information found within the digital contents of the SUBJECT'S CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 2 5 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of Blue Motorola Cellular Smartphone: serial #352304804773364 | Case No. 22-1449MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

Located in the District of Arizona, there is now concealed:

The person or property to be searched, described above, is believed to conceal:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Bringing in or harboring/transporting aliens; Conspiracy |
| 18 U.S.C. § 2 | Aid and Abet |
| 18 U.S.C. § 371 | Conspiracy |

The application is based on these facts:

**See attached Affidavit of BPA-I Daniel Casanova**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Louis C. Uhl

_Applicant's Signature_

Daniel Casanova, Border Patrol Agent-Intelligence
_Printed name and title_

_Louis Uhl_

Subscribed and sworn telephonically before me.

Date: 3/25/2022

_Judge's signature_

City and state: Yuma, Arizona

Honorable James F. Metcalf, U.S. Magistrate Judge
_Printed name and title_

## **ATTACHMENT A**

Property to be searched

The property to be searched is a blue colored Motorola cellular smartphone, serial number 3523048804773364 (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at 4151 S. Avenue A Yuma, AZ 85365.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

Property to be seized

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications of other illegal activity. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO.

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT'S CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

   As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Your Affiant, Border Patrol Agent-Intelligence (BPA-I) Daniel Casanova, being first duly sworn, hereby deposes and states as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, for a search warrant authorizing the examination of the cellular devices (hereinafter "SUBJECT CELLULAR TELEPHONE"), described below and in Attachment A, and the extraction of electronically stored information from that property, as further described in Attachment B. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the property listed in Attachment A, I have set forth only the facts that I believe are necessary to establish probable cause to believe evidence of violations of Title 8 United States Code, Sections 1324(a)(1)(A)(ii) and (iii) (transportation and harboring of aliens) is contained in the property described below and in Attachment A.

2. Your affiant, Daniel Casanova, is a Border Patrol Agent-Intelligence, with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol (USBP). I have been employed as a full-time, sworn federal agent with the USBP since June 2018, having graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The sixteen-week Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), criminal law, statutory authority, as well as Title 19 and 21 of the United States Code.

3. In addition, from 2012 to 2018, I was employed as an Arizona Peace Officer for the Yuma Police Department after graduating from Arizona Law Enforcement Academy. During my career as a police officer, I was a Field Training Officer in charge of teaching and guiding new officers with policy, law, and tactics to perform their duties as police officers. I was a member of the Yuma Police Department Special Enforcement Team (SET) that responded to high stress incidents usually involving armed and dangerous persons. I have also conducted and/or assisted in the investigation of numerous criminal cases related to homicides, sex crimes, narcotics, weapons, burglaries, thefts, fraud, and forgeries.

4. Furthermore, I have successfully completed the Riverside County Peace Officers Standards and Training (POST) Certified Training Course PC 832 Arrest, Search and Seizure for California law enforcement. The Police academy was located in Riverside County, California and consisted of 40 hours of training which included California laws of arrest, general criminal statutes, Investigative Report Writing, and Arrest Methods/Defensive Tactics.

5. From 2020 to 2021, I was assigned to the Imperial County Sheriff's Office Border Crime Suppression Team (ICSO BCST) as a Task Force Investigator (TFI) under authority of section PC 830.8. The BCST is a multi-agency task force that focuses on a wide variety of crimes that affect the border community throughout the Imperial County. In conjunction with investigations involving local border crimes, ICSO BCST Investigators often augment and work jointly with other federal, state, and local agencies investigating a variety of federal/state offenses.

6. I am currently assigned to the Yuma Sector Intelligence Unit as an Intelligence Agent. As an Intelligence agent, I have conducted investigations related to the smuggling of Undocumented Non-Citizens. I have performed various tasks that include but are not limited to: functioning as a surveillance agent, thus observing and recording movements of persons performing criminal acts, and those suspected of performing criminal acts; and interviewing witnesses, cooperating sources and sources of information relative to the smuggling of Undocumented Non-Citizens and the distribution of monies and assets derived from the smuggling (to include the laundering of smuggling proceeds).

7. During the course of my employment with the United States Border Patrol, Imperial County Sheriff's Office, and Yuma Police Department, I have participated in investigations which have resulted in the issuance of arrest warrants, search warrants, and the indictments of persons for a variety of state and federal offenses. I have also participated in alien smuggling and drug smuggling investigations. Additionally, I have made arrests, prepared reports, and provided sworn testimony in state criminal proceedings which relate to public safety.

8. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers.

9. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all the relevant facts known to law enforcement officers.

## II.  **BASIS FOR PROBABLE CAUSE**

10. On March 2, 2022, Border Patrol Agents assigned to the Yuma Sector Intelligence Unit's Field Intelligence Team (FIT) were conducting surveillance within the city limits of Yuma, Arizona, within the District of Arizona, between the Home Depot located at 1111 S. Redondo Center Drive and Harold Giss Parkway. This area is in the northwestern limits of Yuma, close to the Arizona/California border, as well as the international borders between Mexico and Arizona and the interstate border between Arizona and California. As such, this area has historically been rife with alien-smuggling for decades. Specifically, the FIT has recently received information regarding smugglers stopping their vehicle on Redondo Center Drive to provide Undocumented Non-Citizens quick access to a storm drain, located on the east side of the street. The Undocumented Non-Citizens then use the storm drain for concealment until they are able to depart, and board a Union Pacific Train, located about 200 feet west from the drain.

11. At approximately 2105 hours on March 2, 2022, BPA-I Juan PEREZ-ARAUJO observed a Lincoln Sport Utility Vehicle (SUV) bearing California plate 6PCB725, abruptly stop in the middle of the street in the 500 block of Redondo Center Drive. The rear passenger door opened, and multiple subjects quickly exited the vehicle and ran toward a storm drain on the eastside of the street. This chain of events alone immediately led BPA-I PEREZ-ARAUJO to reasonably suspect that alien-smuggling was afoot. The Lincoln SUV immediately left the area northbound on Redondo Center Drive. BPA-I PEREZ-ARAUJO followed the SUV for a few miles until it

stopped at the Circle K, located at 1st and 4th Avenue, in Yuma, Arizona—just south of the Colorado River and the interstate border between Arizona and California, as well as yards away from Intestate-8, a busy interstate highway. It was then that the driver, later identified as Ronald DONAHUE and the passenger, later identified as Kristen SCHMIDT exited the vehicle.

12. At 2130 hours, BPA-I PEREZ-ARAUJO approached DONAHUE, who was standing next to his SUV holding a blue Motorola cell phone. Upon the agent identifying himself, DONAHUE uttered, without prompting or questioning, words to the effect that he was only giving those people a ride and that he picked them up at the Quechan Casino (a popular casino located near Winterhaven, California, and extremely close in vicinity to the international border between California and Mexico. It was then that DONAHUE and his passenger, Kristen SCHMIDT, were informed they were being detained for human smuggling.

13. At approximately 2135 hours, BPA-I PEREZ-ARAUJO was informed that six undocumented Non-Citizens were located hiding inside the storm drain, located in the 500 block of Redondo Center Drive. DONAHUE and his front passenger, Kristen SCHMIDT, were then placed under arrest for human smuggling.

14. At about 2142 hours, DONAHUE and SCHMIDT were advised of their *Miranda* Rights by SBPA Javier GARCIA. DONAHUE and SCHMIDT both stated they understood their rights. BPA-I PEREZ-ARAUJO questioned DONAHUE regarding the people in his vehicle and he explained that he didn't know that they were illegally present in the United States when he picked them up at the Quechan Casino. Questioning was stopped after DONAHUE invoked his rights to the presence of an attorney at that point. DONAHUE and SCHMIDT were transported to the Yuma Border Patrol Station for further processing and investigation.

15. At about 2350 hours, at Yuma Border Patrol station, SCHMIDT was reminded of her *Miranda R*ights and interviewed by BPA-I Monica CRUZ and D. CASANOVA. SCHMIDT explained that when she entered DONAHUE's vehicle in Calipatria, California there were multiple people in the rear passenger area. She described the people as "illegals" who only spoke Spanish. During their travel, SCHMIDT claimed that DONAHUE told her (SCHMIDT) he had to transport the passengers to Home Depot. As they were arriving to the area near the Home Depot in Yuma, Arizona (described above), SCHMIDT claimed that DONAHUE asked one of the passengers if he wanted to be dropped off at the same location, and said the passenger responded affirmatively to that question. It was then, SCHMIDT told agents, that all the subjects inside the vehicle exited the vehicle and ran toward a storm drain.

16. At Yuma Border Patrol Station, all six undocumented Non-Citizens were interviewed by agents. All subjects' stories were similar. They all stated, in essence, that the driver told them to exit the vehicle and hide in the drainpipes until a train arrived.

17. Based on my training and experience, smugglers of Undocumented Non-Citizens are usually hired by a human or alien smuggling organization (ASO). The smuggler is typically provided instructions by cellphone regarding the pick-up and drop-off location of the Undocumented Non-Citizens in his or her charge. The smuggler then utilizes a cell phone to share the location of the aliens with the ASO, to affirm that they (the smugglers) are in fact

transporting their cargo to the predetermined location. For this reason, I believe that DONAHUE's blue Motorola cellular smartphone contains evidence of criminal activity related to the smuggling of Undocumented Non-Citizens.

18. The SUBJECT'S CELLULAR TELEPHONE is currently in the lawful possession of United States Border Patrol (USBP). The SUBJECT'S CELLULAR TELEPHONE was seized during the incident to arrest. Therefore, I seek this warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

19. The SUBJECT'S CELLULAR TELEPHONE is currently in storage at the Yuma Border Patrol Station at 4151 S Avenue A, Yuma, AZ 85365. In my training and experience, I know that the SUBJECT'S CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT'S CELLULAR TELEPHONE first came into the possession of the United States Border Patrol.

### III. **ITEMS TO BE SEIZED**

20. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT'S CELLULAR TELEPHONE.

21. Based upon my knowledge, experience, and training in Alien Smuggling Organization (ASO) investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that individuals involved in alien smuggling activity tend to:

a) Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted, including names and nationalities of smuggled aliens, as well as monies owed and/or paid for alien smuggling;

b) Collect data pertaining to other co-conspirators involved in alien smuggling activity;

c) Possess and maintain records reflecting bank transactions and/or money transfers relating to alien smuggling activity;

d) Maintain collections of records that are in digital or electronic format in a safe, secure, and private environment, including electronic communication devices (such as the Target Phones). These records are often maintained for several years in close proximity to the alien smuggler, usually at the individual's residence, to enable the alien smuggler to review the records, which are highly valued;

e) Correspond with and/or meet with other alien smuggling associates to share alien smuggling information and/or materials;

f) Retain correspondence from other alien smuggling co-conspirators relating to alien smuggling activity;

g)      Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smugglers have been in contact and/or conducted alien smuggling activity.

22.     Based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation and with whom I have conferred, I know that ASOs utilize cellular telephones (such as the Target Phones) to facilitate alien smuggling activity, and to communicate when conducting their illegal activity, utilizing the voice, text, and electronic mail (if accessible) functions of cellular telephones to do so. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO. These cellular telephones usually contain electronically stored data on or within the cellular telephones, including contact names and numbers of alien smuggling associates; call details, including call history, electronic mail (email) messages, text messages and/or text message history; and digital images of alien smuggling associates and/or activity. All of this information can be used to identify and locate alien smuggling associates, identify methods of operation of the ASO, and corroborate other evidence obtained during the course of an investigation.

23.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

IV.     **DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE**

24.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT'S CELLULAR TELEPHONES. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

25.     Probable cause. Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT'S CELLULAR TELEPHONES for at least the following reasons:

a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to

communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

26. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT'S CELLULAR TELEPHONES because:

a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or

used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

27.    Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

28.    Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. **CONCLUSION**

29. Your Affiant submits there is probable cause to believe probable cause to believe that the property listed in Attachment A (SUBJECT'S CELLULAR TELEPHONE) contains evidence related to the transportation and harboring of aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii). For this reason, I respectfully request that this Court issue a search warrant authorizing a search of the SUBJECT'S CELLULAR TELEPHONE listed in Attachment A to seize the items of evidence listed in Attachment B.

Border Patrol Agent-Intelligence Daniel Casanova

United States Border Patrol

Subscribed and sworn to before me telephonically this 25th day of March, 2022.

HONORABLE James F. Metcalf

United States Magistrate Judge